El Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL 2025-161

| | | |
|---|---|---|
| EDWIN CRUZ CRUZ Y OTROS<br><br>Recurridos<br><br>V.<br><br>**CASA BELLA CORP.** Y OTROS<br><br>Peticionarios | TA2025CE00615 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.: E AC2015-0272<br><br>Sobre: Vicios de Construcción |

Panel integrado por su presidenta; la Jueza Cintrón Cintrón, el Juez Monge Gómez y la Juez Lebrón Nieves

*Lebrón Nieves, Juez Ponente*

## RESOLUCIÓN

En San Juan, Puerto Rico, a 6 de noviembre de 2025.

El 14 de octubre de 2025, compareció ante este Tribunal de Apelaciones, Casa Bella Corp. (en adelante, Casa Bella o parte peticionaria), por medio de recurso de *Certiorari*. Mediante este, nos solicita que revisemos la *Orden* emitida el 28 de agosto de 2025 y notificada el 29 de agosto de 2025, por el Tribunal de Primera Instancia, Sala Superior de Caguas. En virtud del aludido dictamen, el foro *a quo* declaró No Ha Lugar la sustitución de perito, solicitada por la parte peticionaria.

Por los fundamentos que adelante se exponen, se desestima el recurso de *Certiorari* por carecer de jurisdicción para entender en el mismo, se levanta la paralización de los procedimientos y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos.

**I**

El recurso que nos ocupa tiene su génesis en una *Demanda*, según enmendada, sobre vicios de construcción interpuesta por los señores Edwin Cruz Cruz y María López Rivera (en adelante, señor

Cruz Cruz), y la Sra. María López Rivera (en adelante, señora López Rivera), (en conjunto en adelante, parte recurrida), en contra de Casa Bella.

Conforme surge del recurso ante nuestra consideración, el 28 de mayo de 2013, el señor Cruz Cruz y la señora López Rivera suscribieron un contrato con Casa Bella para la construcción de una vivienda en un solar que estos habían opcionado en el Barrio Sumidero de Aguas Buenas, Puerto Rico. A los fines de adquirir el aludido solar y construir su vivienda, los recurridos otorgaron un préstamo con COOPACA.

Una vez obtenidos los correspondientes permisos, y habiéndose preparado el solar por la parte recurrida, para el mes de febrero de 2014, la parte peticionaria dio comienzo a la construcción de la residencia en cuestión, para lo cual, las partes acordaron el término de 180 días laborables. Según adujo la parte peticionaria, la construcción de la casa en cuestión finalizó el 27 de junio de 2014. Casa Bella arguyó que, notificó y citó a la parte recurrida para una inspección final. Empero, la parte recurrida no acudió a la inspección citada, y le solicitó a COOPACA que no le pagara la última etapa a la parte peticionaria.

Posteriormente, para el 31 de julio de 2014, la parte recurrida interpuso una *Querella* ante el Departamento de Asuntos del Consumidor (en adelante, el DACO o Departamento) por vicios de construcción. En atención a la referida *Querella*, el DACO ordenó la inspección de la propiedad por un funcionario del Departamento. Luego de realizada la inspección, este procedió a emitir el correspondiente Informe, el cual fue notificado a las partes. Posteriormente, la parte recurrida desistió de la *Querella* ante el ente administrativo.

La parte recurrida optó, en cambio, por interponer el 16 de junio de 2015, la acción objeto del recurso que nos ocupa. En su

*Demanda* alegó ruina de la obra realizada por Casa Bella apoyada en el informe pericial rendido por el ingeniero Manuel Rolón Marrero de fecha del 16 de enero de 2016.[1]  Por su parte, Casa Bella, contrató los servicios del ingeniero estructural Eduardo Gandía para fungir como perito en la aludida acción entablada en su contra.[2]

Atinente al caso que nos ocupa, tras varias incidencias procesales innecesarias pormenorizar, la parte peticionaria le solicitó al foro primario autorización para sustituir al perito, toda vez que, en junio de 2025, el ingeniero Gandía le anunció que decidió retirarse de la práctica de su profesión de ingeniero.

Durante la vista celebrada el 21 de julio de 2025, la parte recurrida solicitó término del tribunal para oponerse a la sustitución del perito.  El foro *a quo* le concedió la oportunidad de oponerse, pero concedió a la parte peticionaria hasta el 20 de agosto para anunciar su nuevo perito.[3]  El 7 de agosto de 2025 la parte recurrida radicó *Urgente Oposición a la Moción Informando Necesidad de Sustituir el Perito de la Parte Demandada*, alegando que el ingeniero Gandía estaba activo en el Registro del Colegio de Ingenieros. Acompañó su moción con una Certificación del Colegio de Ingenieros, a los afectos de que la licencia del ingeniero Gandía estaba activa hasta el 2027.

El 13 de agosto de 2025 la primera instancia judicial le concedió a la parte peticionaria 10 días para replicar a dicha moción. En cumplimiento con lo ordenado, el 25 de agosto de 2025 la parte peticionaria replicó a la moción en oposición de la parte

---

[1] El ingeniero Rolón Marrero, concluye en su informe que la obra pudiera constituir ruina por razón de que la parte peticionaria no colocó varillas ("dowels") que unieran las paredes al cimiento o piso de la estructura.

[2] El ingeniero Gandía concluyó en su informe pericial que los "dowels" sí habían sido colocados, uniendo piso y pared. La parte recurrida estuvo presente durante las pruebas y tomó fotografías donde se evidenciaba la existencia de los "dowels". A su vez, la parte recurrida amparada en el Informe del ingeniero Rolón Marrero instó un procedimiento criminal contra la parte peticionaria. Según señala la parte peticionaria en su recurso, no hubo causa para arresto en la vista de Regla 6. Indicó, además, que en la vista de Regla 6 en alzada testificó el ingeniero Rolón Marrero, así como el Ingeniero Gandía y que el Tribunal determinó No Causa.

[3] Véase copia de la minuta acompañada como Apéndice 7.

demandante.  Así las cosas, el día 28 de agosto de 2025, notificada al día siguiente, el Tribunal de Primera Instancia emitió *Orden* mediante la cual declaró No Ha Lugar a la sustitución del perito.

El día 9 de septiembre de 20225, la parte peticionaria radicó *Moción de Reconsideración,* la cual fue declarada No Ha Lugar mediante Orden del día 11 de septiembre de 2025.

Aún inconforme, la parte peticionaria acudió ante este foro revisor mediante *Certiorari* donde esgrimió el siguiente señalamiento de error:

> **Erró el Honorable Tribunal de Primera Instancia al declarar No Ha Lugar a la sustitución del perito.**

Conjuntamente con el recurso, la parte peticionaria presentó *Moción en Auxilio de Jurisdicción,* razón por la cual, emitimos la *Resolución* que se transcribe a continuación:

> Examinado el recurso de *Certiorari,* así como la *Moción en Auxilio de Jurisdicción,* presentados el 14 de octubre de 2025 a las 8:54pm, por la parte peticionaria Casa Bella Corp., este Tribunal dispone:
>
> Se declara HA LUGAR la *Moción en Auxilio de Jurisdicción,* y se decreta la paralización de los procedimientos hasta que este Tribunal de otro modo disponga.
>
> En cuanto al recurso de *Certiorari,* la parte recurrida, dispone hasta el **lunes 27 de octubre de 2025**, para exponer su posición en torno al recurso de epígrafe.  Transcurrido el término aquí dispuesto, se tendrá el recurso por perfeccionado para su adjudicación final.

En cumplimiento con lo ordenado, el 24 de octubre de 2025, la parte recurrida presentó *Moción Solicitando Desestimación por Falta de Jurisdicción y en Cumplimiento de Orden.*

En atención a la referida moción, el 27 de octubre de 2025 emitimos *Resolución* en la cual dispusimos lo siguiente:

> Examinada la *Moción Solicitando Desestimación por Falta de Jurisdicción y en Cumplimiento de Orden,* presentada el 24 de octubre de 2025 por la parte recurrida, este Tribunal dispone:
>
> Exponga su posición la parte peticionaria en o antes del viernes, 31 de octubre de 2025.

El 30 de octubre de 2025, la parte peticionaria presentó ante este foro revisor, *Réplica a Moción de Desestimación.*

Examinado rigurosamente el expediente ante nuestra consideración, procedemos a atender la moción dispositiva, así como la oposición a la misma presentadas en recurso de epígrafe.

**II**

### A. El Certiorari

El certiorari es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020)[4]. Ahora bien, tal "discreción no opera en lo abstracto. A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, […], dispone los criterios que dicho foro deberá considerar, de manera que pueda ejercer sabia y prudentemente su decisión de atender o no las controversias que le son planteadas". (citas omitidas) *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008); *Pueblo v. Rivera Montalvo*, supra, pág. 372; *Torres González v. Zaragoza Meléndez*, supra, pág. 848.  La precitada Regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

---

[4] Véase también, *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009).

(D)  Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E)  Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.

(F)  Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G)  Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[5]

No obstante, "ninguno de los criterios antes expuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, es determinante, por sí solo, para este ejercicio de jurisdicción, y no constituye una lista exhaustiva". *García v. Padró*, 165 DPR 324, 327 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97.

El certiorari, como recurso extraordinario discrecional, debe ser utilizado con cautela y solamente por razones de peso. *Pérez v. Tribunal de Distrito*, 69 DPR 4, 7 (1948). Este procede cuando no está disponible la apelación u otro recurso que proteja eficaz y rápidamente los derechos del peticionario. *Pueblo v. Tribunal Superior*, 81 DPR 763, 767 (1960). Nuestro Tribunal Supremo ha expresado también que "de ordinario, el tribunal apelativo no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma

---

[5] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 59, 215 DPR __ (2025).

procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992*); Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

### B. Jurisdicción

Nuestro Tribunal Supremo, ha definido la jurisdicción como el poder que ostentan los tribunales para considerar y decidir los casos y las controversias que sean presentados a su atención. *Beltrán Cintrón v. ELA*, 204 DPR 89 (2020), *Torres Alvarado v Madera Atiles*, 202 DPR 495 (2019); *S.L.G. Solá-Moreno v. Bengoa Becerra*, 182 DPR 675, 682 (2011). Es normativa reiterada que, los tribunales debemos ser celosos guardianes de nuestra jurisdicción, es por lo que, los asuntos relativos a la jurisdicción son privilegiados y deben ser atendidos con prontitud. *Torres Alvarado v Madera Atiles*, supra, pág. 500; *González v. Mayagüez Resort & Casino*, 176 DPR 848, 856 (2009). La ausencia de jurisdicción puede ser levantada *motu proprio*, ya que, esta incide de forma directa sobre el poder del tribunal para adjudicar una controversia. *Allied Management Group, Inc. v Oriental Bank*, 204 DPR 374 (2020); *Torres Alvarado v Madera Atiles*, supra, pág. 500; *Ruiz Camilo v. Trafon Group Inc.,* 200 DPR 254, 268 (2018); *Suffront v. A.A.A.,* 164 DPR 663, 674 (2005).

### C. Perfeccionamiento de Recursos

Como norma general, el incumplimiento con las reglas de los tribunales apelativos impide la revisión judicial. *Cárdenas Maxán v. Rodríguez,* 119 DPR 642, 659 (1987). Es por lo que, las normas que rigen el perfeccionamiento de los recursos apelativos deben observarse rigurosamente. *Rojas v. Axtmayer Ent., Inc.*, 150 DPR 560, 564 (2000); *Hernández Maldonado v. Taco Maker,* 181 DPR 281, 290 (2011); *Soto Pino v. Uno Radio Group*, 189 DPR 84, 90 (2013). El incumplimiento con las disposiciones reglamentarias

sobre forma, contenido y presentación de los recursos apelativos pudiera tener como consecuencia la desestimación de estos. *Pueblo v. Valentín Rivera*, 197 DPR 636, 641 (2017). Nuestra Máxima Curia ha requerido un cumplimiento fiel y estricto con las disposiciones reglamentarias, tanto de nuestro Tribunal Supremo como de este Tribunal de Apelaciones. *Hernández Maldonado v. Taco Maker*, 181 DPR 281, 290 (2011), *Arriaga v. FSE*, 145 DPR 122, 130 (1998).

El Alto Foro ha dispuesto que, para que un recurso quede perfeccionado es necesaria su oportuna presentación y notificación del escrito a las demás partes. *González Pagán v. Moret Guevara*, 202 DPR 1062, 1070-1071 (2019).

En lo pertinente, el Reglamento del Tribunal de Apelaciones, según enmendado, en su Regla 33(B)[6], preceptúa lo pertinente a la notificación a las partes. Específicamente, la precitada Regla dispone que la presentación electrónica de un recurso de *certiorari* constituirá la notificación que debe efectuarse entre abogados y abogadas, así como al Procurador General o a la Procuradora General y al Fiscal de Distrito o a la Fiscal de Distrito en los casos criminales. Una vez se presente el recurso, la plataforma electrónica emitirá una notificación que indicará el nombre y la dirección de correo electrónico de los abogados o las abogadas que fueron notificados(as) de la presentación del recurso. **Será responsabilidad de la parte peticionaria corroborar que la información que surja de esta notificación automática sea correcta.** (*Énfasis suplido*). Será deber de la parte peticionaria notificar el recurso de *certiorari* a las partes que litigan por derecho propio o a cualquier otra parte que sea requerida según las disposiciones legales aplicables.

Cuando la notificación electrónica no sea viable, la parte peticionaria notificará la solicitud de *certiorari*, debidamente sellada

---

[6] Regla 33(B) del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 59, 215 DPR __ (2025).

con la fecha y la hora de presentación, a los abogados o abogadas de récord, o en su defecto, a las partes, así como al Procurador General o a la Procuradora General, y al Fiscal de Distrito o a la Fiscal de Distrito en los casos criminales, dentro del término dispuesto para la presentación del recurso. ***Este término será de cumplimiento estricto.***[7] Efectuará la notificación por correo certificado con acuse de recibo o mediante un servicio similar de entrega personal por compañía privada con acuse de recibo. Cuando se efectúe por correo, se remitirá la notificación a los abogados o abogadas de las partes, o a las partes, cuando no estuvieren representadas por abogado o abogada, a la dirección postal que surja del último escrito que conste en el expediente del caso. **Cuando del expediente no surja una dirección, de estar la parte representada por abogado o abogada, la notificación se hará a la dirección que de este o esta surja del registro que a esos efectos lleve el Secretario o Secretaria del Tribunal Supremo. La parte peticionaria certificará el hecho de la notificación en la propia solicitud de *certiorari*.**[8] La fecha del depósito en el correo se considerará como la fecha de la notificación a las partes. La notificación mediante entrega personal deberá hacerse en la oficina de los abogados o las abogadas que representen a las partes, entregándola a estos o estas, o a cualquier persona a cargo de la oficina. De no estar la parte representada por abogado o abogada, se entregará en el domicilio o dirección de la parte o de las partes, según esta surja de los autos, a cualquier persona de edad responsable que se encuentre en esta. En caso de entrega personal, se certificarán la forma y las circunstancias de tal diligenciamiento, lo que se hará dentro de las próximas cuarenta y ocho horas. El término aquí dispuesto será de cumplimiento estricto.

---

[7] Énfasis suplido.
[8] Énfasis suplido.

La notificación podrá efectuarse por los otros medios, en la forma y bajo los requisitos dispuestos en la Regla 13(B) de este Reglamento.

**Toda comunicación electrónica entre los abogados y las abogadas de las partes, incluida la notificación de escritos presentados al tribunal, así como las comunicaciones entre los abogados y las abogadas de las partes y el tribunal, será realizada a la dirección de correo electrónico de estos y estas que consta en el RUA.**[9]

Con relación a los términos de cumplimiento estricto y jurisdiccional, el Tribunal Supremo de Puerto Rico expresó en *Soto Pino v. Uno Radio Group*, supra, pág. 92, lo siguiente:

> Es norma harto conocida en nuestro ordenamiento que un término de cumplimiento estricto puede ser prorrogado por los tribunales. Ello a diferencia de los llamados términos jurisdiccionales, cuyo incumplimiento impide la revisión judicial por privar de jurisdicción a los tribunales. Véase *Cruz Parrilla v. Depto. Familia,* 184 D.P.R. 393 (2012). Sin embargo, para prorrogar un término de cumplimiento estricto "generalmente se requiere que la parte que solicita la prórroga, o que actúa fuera de término, presente justa causa por la cual no puede cumplir con el término establecido". *Íd.* pág. 403.

Dicha norma fue reiterada posteriormente, en *Rivera Marcucci et al. v. Suiza Dairy*, 196 DPR 157, 170 (2016), al indicar que "los tribunales *no gozan de discreción para prorrogar los términos de cumplimiento estricto automáticamente*"[10]. En el aludido caso[11], el Tribunal Supremo dispuso lo siguiente:

> [E]l foro adjudicativo tiene discreción para extender un término de cumplimiento estricto **solo cuando la parte que lo solicita demuestra justa causa para la tardanza**. Al ser así, se le requiere a quien solicita la prórroga o a quien actúe fuera del término que presente justa causa por la cual no puede o pudo cumplir con el término establecido.[12] En conformidad con esto, nuestra última instancia judicial ha reafirmado que los tribunales podrán eximir a una parte de observar el cumplimiento con un término de

---

[9] Énfasis suplido.
[10] *Soto Pino v. Uno Radio Group*, supra, pág. 93.
[11] *Rivera Marcucci et al. v. Suiza Dairy*, supra, pág. 171.
[12] *Soto Pino v. Uno Radio Group*, supra, pág. 92.

este tipo únicamente si concurren las condiciones siguientes: **(1) que en efecto exista justa causa para la dilación y (2) que la parte le demuestre detalladamente al tribunal las bases razonables que tiene para la dilación, es decir, que acredite de manera adecuada la justa causa aludida.**[13]
(Énfasis nuestro).

Las partes litigantes deben atender estos requerimientos con seriedad, ya que "[n]o se permitirá desviación alguna del plazo [...] so pena de desestimación del recurso, a menos que la tardanza ocurrida se justifique detalladamente y a cabalidad". *Pueblo v. Fragoso Sierra*, 109 DPR 536, 539 (1980). Con respecto al requisito de justa causa, en *Soto Pino v. Uno Radio Group*, supra, nuestra Alta Curia reiteró que la justa causa se acredita mediante explicaciones "concretas y particulares, -debidamente evidenciadas en el escrito-que le permitan al tribunal concluir que hubo una excusa razonable para la tardanza o la demora". *Soto Pino v. Uno Radio Group*, supra pág. 93 citando a *Febles v. Romar*, 159 DPR 714, 720 (2003).

Finalmente, conforme ha resuelto el Alto Foro, la parte que comparece ante el Tribunal de Apelaciones, tiene la obligación de perfeccionar su recurso según lo exige el Reglamento del Tribunal de Apelaciones, para así colocar al foro apelativo en posición de poder revisar al tribunal de instancia. *Morán v. Marti*, 165 DPR 356, 367 (2005).

En consonancia con lo anterior, nuestra última instancia judicial expresó en *Hernández Jiménez v. AEE*, 194 DPR 378, 382-383 (2015) que:

> Todo ciudadano tiene un derecho estatutario a que un tribunal de superior jerarquía revise los dictámenes emitidos por los tribunales inferiores.[14] Ahora bien, ese derecho queda condicionado a que las partes observen rigurosamente el cumplimiento de las disposiciones reglamentarias establecidas por nuestro ordenamiento jurídico sobre la forma, contenido, presentación y notificación de los recursos, incluyendo

---

[13] *Id.*, pág. 93.
[14] *García Morales v. Mercado Rosario*, 190 DPR 632, 638 (2014).

lo dispuesto en los Reglamentos del Tribunal de Apelaciones y del Tribunal Supremo.[15]

Esbozada la normativa jurídica que enmarca la controversia de epígrafe, procedemos a aplicarla.

**III**

En su único señalamiento de error, la parte peticionaria sostiene que, erró el Tribunal de Primera Instancia al declarar No Ha Lugar a la sustitución del perito.

Ahora bien, como cuestión de umbral, nos corresponde auscultar nuestra jurisdicción. Veamos.

Tal y como esbozamos previamente, en atención al recurso de marras, el 24 de octubre de 2025, la parte recurrida interpuso ante este foro revisor, *Moción Solicitando Desestimación por Falta de Jurisdicción y en Cumplimiento de Orden*. En la aludida moción desestimatoria nos plantea que, el recurso de epígrafe fue presentado por la parte peticionaria el 14 de octubre de 2025, esto es, el último día del término reglamentario para comparecer ante este foro revisor intermedio. La parte recurrida puntualizó que, de una revisión de las partes notificadas surge que, el recurso de *Certiorari* no fue notificado a la representante legal de COOPACA, la Lcda. Diana I. Díaz Cruz. Lo anterior, sin demostrar justa causa para tal omisión.

Arguye que, de una revisión del *Certiorari* presentado, surge que la parte peticionaria identificó al Lcdo. Luis A. López López, como representante legal de COOPACA, a pesar de que este renunció a la representación legal de dicha parte en el año 2022. Añadió que, el foro primario ha estado notificando las órdenes a COOPACA por conducto de la Lcda. Diana I. Díaz Cruz, quien asumió la

---

[15] *Soto Pino v. Uno Radio Group*, supra, pág. 90; *Hernández Maldonado v. Taco Maker*, supra, pág. 290; *Arriaga v. FSE*, supra, pág. 130.

representación legal de dicha entidad el 12 de noviembre de 2024, y cuyo correo electrónico es ddiaz@rmvlaw.net.

En respuesta, la parte peticionaria, en su escueta *Réplica a Moción de Desestimación* indica que, la alegación de la parte recurrida respecto a que el recurso no fue notificado a la representación legal de COOPACA, "no es del todo cierta". Añade y citamos:

[........]

3. Tanto el recurso radicado como la Moción en Auxilio de jurisdicción le fue notificado a todas las partes, incluyendo al Lcdo[.] Reinaldo Maldonado V[é]lez, quien, junto con la Lcda[.] Diana Díaz, representan a la co-demandada COOPACA. Debo indicar que en la notificación al Lcdo[.] Reinaldo Maldonado V[é]lez cometimos un error en el correo electrónico ya que se escribió rmaldonado@rmv.net cuando debió se rmaldonado@rmvlaw.net. (Además de la notificación que se verificó a través de SUMAC, también procedimos a notificar a través de los diferentes correos electrónicos a todas las partes.) Se acom[pa]ña copia de la notificación.

4. Dicho error fue subsanado ya que el 16 de octubre de 2025 se le envió a la Lcda[.] Diana Díaz copia del recurso y de la Moción en Auxilio de Jurisdicción. Se acompaña copia de la notificación efectuada a la Lcda[.] Diana Díaz.

Evaluado cuidadosa y ponderadamente el asunto de falta de notificación del recurso, traído ante nuestra atención por la parte recurrida y tomando en consideración las propias expresiones de la parte peticionaria, no albergamos duda alguna de que el recurso no fue notificado oportunamente a COOPACA. Puntualizamos que, a pesar de que la parte peticionaria asevera que notificó el recurso tanto al licenciado Maldonado Vélez como a la licenciada Díaz Cruz, reconoció que: "cometimos un error en el correo electrónico ya que se escribió rmaldonado@rmv.net cuando debió se[r] rmaldonado@rmvlaw.net. Añadió que, "[d]icho error fue subsanado ya que el 16 de octubre de 2025 se le envió a la Lcda[.] Diana Díaz copia del recurso y de la Moción en Auxilio de Jurisdicción." Como esbozamos previamente, el recurso fue presentado el último día del

término reglamentario, razón por la cual, la alegada notificación realizada el 16 de octubre de 2025 fue efectuada fuera del término reglamentario y peor aún, sin acreditar justa causa para tal demora.

En vista de lo anterior, resulta forzoso concluir que carecemos de jurisdicción para entender en el recuso debido a la falta de notificación del recurso a COOPACA dentro del término reglamentario para ello. Tal y como señaló nuestra última instancia judicial, "es un deber acreditar la existencia de justa causa, *incluso antes de que un tribunal se lo requiera,* si no se observa un término de cumplimiento estricto".[16]

### IV

Por los fundamentos que anteceden, se *desestima* el recurso de *Certiorari* por carecer de jurisdicción para entender en el mismo, se levanta la paralización de los procedimientos y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[16] *Soto Pino v. Uno Radio Group,* supra, pág. 97, citado con aprobación en *Rivera Marcucci v. Suiza Dairy Inc.*, supra, pág. 171. Énfasis en el original.